1
2
3
4
5
6

# IN THE UNITED STATES DISTRICT COURT

7

## FOR THE DISTRICT OF ARIZONA

8

9   Christopher John Benedetto,

10                              Petitioner,

11   v.

12   State of Arizona, Lyle Broadhead, Attorney
     General of the State of Arizona,

13

14                              Respondents.

No. CV 14-00033 PHX JAT (MEA)

**REPORT AND
RECOMMENDATION**

15   **TO THE HONORABLE JAMES A. TEILBORG**

16          Petitioner docketed a petition seeking a writ of habeas corpus pursuant to 28

17   U.S.C. § 2254 and a motion for leave to proceed *in forma pauperis* on January 7, 2014.

18   Petitioner paid the filing fee in this matter on February 26, 2014.  See Doc. 5.  On May

19   13, 2014,   the motion for leave to proceed *in forma pauperis* was denied as moot and the

20   petition was dismissed with leave to amend.   See Doc. 6.   Petitioner docketed an

21   amended habeas petition (Doc. 7) on May 22, 2014.  On June 3, 2014, the Court ordered

22   the amended petition be dismissed with leave to amend.  See Doc. 8.  Petitioner docketed

23   an amended petition (Doc. 9) on June 13, 2014, and again on June 18, 2014.  See Doc.

24   10.   On July 11, 2014, Petitioner docketed a motion seeking leave to "change" his

25   amended habeas petition and lodged a proposed amended petition.  See Doc. 11 & Doc.

26   12.  In an order entered August 5, 2014, see Doc. 13, the Court granted the motion at

27   Doc. 11, ordered the fourth amended petition lodged at Doc. 12 be docketed,  see Doc.

28   14, and ordered Respondents to answer grounds one, two, and three of the Fourth

Amended Petition.  Respondents docketed an answer to the Fourth Amended Petition at Doc. 14 on October 6, 2014.  See Doc. 26.  On October 14, 2014, Petitioner docketed a pleading styled as a waiver of his right to docket a substantive reply to the answer to his petition.  See Doc. 27

## I Procedural background

A Maricopa County grand jury indictment returned September 3, 2010, charged Petitioner with one count of theft of a means of transportation, a class 3 felony.  See Answer, Exh. A..  The Arizona Court of Appeals summarized the factual predicate for Petitioner's conviction as follows:

> Defendant ran a red light on August 26, 2010, and was stopped in a Circle K parking lot by a City of Phoenix police officer. The officer discovered that the license plate did not match the SUV, and that the SUV was stolen. In addition to other damage, the officer noticed that Defendant was using a screwdriver to start the vehicle.
>
> After he was arrested and read his Miranda rights, Defendant told the officer that "he had bought [the SUV] from a black male in the area of . . . Fifth Street and Hatcher on July 30 of 2010" for $350. Defendant could not, however, provide the name, contact information, or description of the seller, and the officer was unable to locate a bill of sale in the SUV. Defendant also admitted he had been using a screwdriver to start the SUV since the purchase.

Id., Exh. I at 2-3.  The owner of the SUV was in the hospital at the time the vehicle was allegedly stolen.  Id., Exh. I at 2.

Petitioner's jury trial began on March 14, 2011.  Id., Exh. B.  "Kevin", the brother of the owner of the SUV, testified at Petitioner's trial that he noticed the vehicle missing between July 26 and August 9, 2010, and that he reported the vehicle stolen after his brother died on August 14, 2010.  Kevin was the first witness to testify after opening argument and Kevin was not present when the other witnesses testified.  Id., Exh. CC at 34-77.  Petitioner testified at his trial.  Id., Exh. CC at 145-232.  On March 17, 2011, the jury returned a guilty verdict.  Id., Exhs. C & D.  After reviewing a presentence investigation report, see id., Exh. H, on April 27, 2011, the trial court sentenced Petitioner to the presumptive term of 6.5 years of incarceration pursuant to his conviction

1    for theft of a means of transportation.  Id., Exh. E.

2            Petitioner took a timely direct appeal of his conviction and sentence.  Id., Exhs. J
3    & K.  In his direct appeal Petitioner argued there was insufficient evidence to convict
4    him, that the denial of Petitioner's untimely notice to change the trial judge was
5    reversible error, and that the trial court abused its discretion by denying Petitioner's
6    motion to invoke the state rule of exclusion of witnesses against a person (Kevin) listed
7    in pretrial documents as a victim.  Id., Exh. L.

8            In a memorandum opinion issued April 26, 2012, the Arizona Curt of Appeals
9    rejected all of Petitioner's claims for relief and affirmed his conviction and sentence.  Id.,
10   Exh. I.  See also 2012 WL 1468471.  On May 25, 2012, Petitioner's counsel notified
11   Petitioner of the appellate court's decision and notified Petitioner that he could file a pro
12   per petition for review of the decision by the Arizona Supreme Court.  Id., Exh. O.
13   Petitioner did not file a petition for review.  Id., Exh.R.

14           Petitioner initiated a state action for post-conviction relief pursuant to Rule 32,
15   Arizona Rules of Criminal Procedure, on June 11, 2012.  Id., Exh. S.  Petitioner was
16   appointed counsel to represent him in his Rule 32 proceedings.  Id., Exh. W.  On October
17   14, 2013, Petitioner's appointed counsel notified the state trial court that they could find
18   no colorable claims for relief to assert in a Rule 32 proceeding.  Although Petitioner was
19   given an extension of time to file a pro per Rule 32 petition, Petitioner did not file a
20   petition.  Id., Exh. Y.  On February 2, 2014, the state trial court dismissed Petitioner's
21   Rule 32 action.  Id., Exh. V.

22           In his federal habeas action Petitioner asserts he was denied his right to the
23   effective assistance of counsel "due to false indictment", that there was insufficient
24   evidence to sustain his conviction, and that the trial court erroneously denied Petitioner's
25   motion to treat "K.G." (Kevin) as a witness, rather than a victim, for purposes of the state
26   rule excluding witnesses from trial.  The Court did not require Respondents to answer
27   Petitioner's fourth ground for relief.

28

1

2    **II Analysis**

3    **A. Exhaustion and procedural default**

4    Absent limited circumstances, the District Court may only grant federal habeas

5    relief on the merits of a claim which has been "properly" exhausted in the state courts.

6    See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Coleman

7    v. Thompson, 501 U.S. 722, 729–30, 111 S. Ct. 2546, 2554–55 (1991). To properly

8    exhaust a federal habeas claim, the petitioner must afford the state courts the opportunity

9    to rule upon the merits of the claim by "fairly presenting" the claim to the state's

10   "highest" court in a procedurally correct manner.  See, e.g., Castille v. Peoples, 489 U.S.

11   346, 351, 109 S. Ct. 1056, 1060 (1989); Rose v..Palmateer, 395 F.3d 1108, 1110 (9th Cir.

12   2005).   The Ninth Circuit Court of Appeals has concluded that, in non-capital cases

13   arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the

14   habeas petitioner presented his claim to the Arizona Court of Appeals, either on direct

15   appeal or in a petition for post-conviction relief.  See Swoopes v. Sublett, 196 F.3d 1008,

16   1010 (9th Cir. 1999).  See also Date v. Schriro, 619 F. Supp. 2d 736, 762-63  (D. Ariz.

17   2008); Crowell v. Knowles, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007).

18   To satisfy the "fair presentment" prong of the exhaustion requirement, the

19   petitioner must present "both the operative facts and the legal principles that control each

20   claim to the state judiciary."  Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001).  See

21   also Woods v. Sinclair, 764 F.3d 1109, 1129 (9th Cir. 2014).  In Baldwin v. Reese, the

22   Supreme Court reiterated that the purpose of exhaustion is to give the states the

23   opportunity to pass upon and correct alleged constitutional errors.  See 541 U.S. 27, 29,

24   124 S. Ct. 1347, 1349 (2004). Therefore, if the petitioner did not present the federal

25   habeas claim to the state court as asserting the violation of a specific federal

26   constitutional right, as opposed to violation of a state law or a state procedural rule, the

27   federal habeas claim was not "fairly presented" to the state court.  See, e.g., id., 541 U.S.

28   at 33, 124 S. Ct. at 1351; Arrendondo v. Neven, 763 F.3d 1122, 1138 (9th Cir. 2014).

In order to fulfill exhaustion requirements, a petitioner must present to the state courts the "substantial equivalent" of the claim presented in federal court. See, e.g., Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 513–14 (1971); Dickens v. Ryan, 740 F.3d 1302, 1318-19 (9th Cir. 2014)[1]; Libberton v. Ryan, 583 F.3d 1147, 1164 (9th Cir. 2009). Full and fair presentation requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief. See Arrendondo, 763 F.3d at 1138; Scott v. Schriro, 567 F.3d 573, 582 (9th Cir. 2009); Lopez v. Schriro, 491 F.3d 1029, 1040 (9th Cir. 2007). Although a habeas petitioner need not recite "book and verse on the federal constitution" to fairly present a claim to the state courts, Picard, 404 U.S. at 277–78, 92 S. Ct. at 512–13, they must do more than present the facts necessary to support the federal claim. See Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982).

> In order to "fairly present" an issue to a state court, a petitioner must "present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief." Scott v. Schriro, 567 F.3d 573, 582 (9th Cir. 2009). As a general matter, each "unrelated alleged instance [ ] of counsel's ineffectiveness" is a separate claim for purposes of exhaustion. Moormann v. Schriro, 426 F.3d 1044, 1056 (9th Cir. 2005). In Moormann, for example, we held that petitioner's claim that "counsel was ineffective for failing to investigate and present a viable defense" did not fairly present the more specific claim that counsel was ineffective in "presenting the insanity defense." Id. Thus, we recognized that while a petitioner who "presented a particular claim" would not be barred from later "develop[ing] additional facts supporting that particular claim," it did not mean that "a petitioner who presented any ineffective assistance of counsel claim below can later add unrelated alleged instances of counsel's ineffectiveness to [that] claim."

---

[1]

A claim has not been fairly presented in state court if new factual allegations either "fundamentally alter the legal claim already considered by the state courts," Vasquez, 474 U.S. at 260, 106 S.Ct. 617; Beaty, 303 F.3d at 989–90, or "place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it." Aiken, 841 F.2d at 883; accord Nevius v. Sumner, 852 F.2d 463, 470 (9th Cir.1988).

Id. at 1056; see also Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992) (en banc) (holding that an ineffective assistance claim for failure to vigorously cross-examine a witness did not exhaust ineffective assistance claims directed to other independent omissions by counsel).

Gulbrandson v. Ryan, 738 F.3d 976, 992 (9th Cir. 2013), cert. denied, 134 S. Ct. 2823 (2014).

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c). Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts.  See Woodford v. Ngo, 548 U.S. 81, 92–93, 126 S. Ct. 2378, 2387 (2006).  Accordingly, if it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim.  See, e.g., id., 548 U.S. at 92, 126 S. Ct. at 2387; Murray v. Schriro, 745 F.3d 984, 1014-16 (9th Cir. 2014).

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims.  See Castille, 489 U.S. at 351–52, 109 S. Ct. at 1060; Cooper v. Neven, 641 F.3d 322, 327 (9th Cir. 2011); Sandgathe v. Maass, 314 F.3d 371, 376 (9th Cir. 2002).  Procedural default also occurs when a petitioner did present a claim to the state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule.  See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594–95 (1991); Coleman v. Thompson, 501 U.S. 722, 727–28, 111 S. Ct. 2546, 2553–57 (1991); Cooper, 641 F.3d at 327; Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002). "If a prisoner has defaulted a state claim by 'violating a state procedural rule which would constitute adequate and independent grounds to bar direct review ... he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence.'" Ellis v.

1    Armenakis, 222 F.3d 627, 632 (9th Cir. 2000), quoting Wells v. Maass, 28 F.3d 1005,

2    1008 (9th Cir. 1994).   See also Hurles v. Ryan, 752 F.3d 768, 779 (9th Cir. 2014),

3    petition for cert. filed, Aug 15, 2014 (No. 14-191).

4          In Arizona, claims not previously presented to the state courts in either a direct

5    appeal or on collateral review in a Rule 32 action are generally barred from federal

6    review because an attempt to return to state court to present them is futile unless the

7    claims fit in a narrow category of claims for which a successive Rule 32 action is

8    permitted.   See Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a) & (b) (successive petitions are

9    limited to claims of being held in custody beyond sentence expiration, newly-discovered

10   material facts, requests for delayed appeal, significant change in the law retroactively

11   applicable that would probably overturn conviction or sentence, and actual innocence);

12   Spreitz v. Ryan, 617 F. Supp. 2d 887, 899–900 (D. Ariz. 2009) (describing Arizona's

13   preclusion rule).

14          For the procedural default rule to apply, "the application of the state
            procedural rule must provide an adequate and independent state law basis

15          on which the state court can deny relief." Bennett v. Mueller, 322 F.3d 573,
            580 (9th Cir. 2003) (amended) (internal quotation marks and citations

16          omitted). Arizona's waiver rules are independent and adequate bases for
            denying relief. Stewart v. Smith, 536 U.S. 856, 859–60, 122 S.Ct. 2578, []

17          (2002) (per curiam) (holding denials pursuant to Arizona waiver rules are
            independent of federal law); Ortiz v. Stewart, 149 F.3d 923, 931–32 (9th

18          Cir. 1998) (finding Arizona waiver rule consistently and regularly applied).

19

20

21   Hurles, 752 F.3d at 780 .

22          To constitute an adequate and independent state procedural ground sufficient to

23   support a state court's finding of procedural default, "a state rule must be clear,

24   consistently applied, and well-established at the time of [the] petitioner's purported

25   default." Lambright v. Stewart, 241 F.3d 1201, 1203 (9th Cir. 2001).   See also Murray v,.

26   Schriro, 745 F.3d 984, 1015-16 (9th Cir. 2014).   A state rule is considered consistently

27   applied and well-established if the state courts follow it in the "vast majority of cases."

28   Scott, 567 F.3d at 580, quoting Dugger v. Adams, 489 U.S. 401, 417 n.6, 109 S. Ct.

1211, 1221 n.6 (1989).  Additionally, for the proffered state procedural bar to preclude the consideration of a habeas claim "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."  Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S. Ct. 2633, 2638–39 (1985).  See also Harris v. Reed, 489 U.S. 255, 261–62, 109 S. Ct. 1038, 1042 (1989).

> "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263, 109 S.Ct. 1038, [ ].... Sanders v. Cotton, 398 F.3d 572, 580 (7th Cir. 2005) (where the state appellate court's discussion of waiver is intertwined with its merits analysis, the state court's decision does not rest on an independent and adequate state law ground) ....

Pole v. Randolph, 570 F.3d 922, 937 (7th Cir. 2009) (some internal citations and quotations omitted).  See also Scott, 567 F.3d at 581–82.

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims, which have been found to be consistently applied and well-established, bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted, but procedurally defaulted, any claim not fairly presented to the Arizona Court of Appeals in his direct appeal or Rule 32 action.  See, e.g., Hurles, 752 F.3d at 780.  See also Stewart v. Smith, 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002) (holding Arizona's state rules regarding the waiver and procedural default of claims raised in attacks on criminal convictions are adequate and independent state grounds for affirming a conviction and denying federal habeas relief on the grounds of a procedural bar).  Because Petitioner did not properly present any claims to the Arizona courts in his Rule 32 action, the only claims properly exhausted by Petitioner are the claims raised in his direct appeal.

**B. Cause and prejudice**

The Court may consider the merits of a procedurally defaulted claim if the petitioner establishes cause for their procedural default and prejudice arising from that

default. "Cause" is a legitimate excuse for the petitioner's procedural default of the claim and "prejudice" is actual harm resulting from the alleged constitutional violation.  See, e.g., Clabourne v. Ryan, 745 F.3d 362, 375 (9th Cir. 2014).  Under the "cause" prong of this test, Petitioner bears the burden of establishing that some objective factor external to the defense impeded his compliance with Arizona's procedural rules.  See Moorman v. Schriro, 426 F.3d 1044, 1058 (9th Cir. 2005); Vickers v. Stewart, 144 F.3d 613, 617 (9th Cir. 1998); Martinez–Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir. 1996).   To establish prejudice, the petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1595 (1982). See also Correll v. Stewart, 137 F.3d 1404, 1415–16 (9th Cir. 1998).  The Ninth Circuit Court of Appeals has also stated that prejudice is established by a petitioner's "actual innocence."  See Vosgien v. Persson, 742 F.3d 1131, 1134-35 (9th Cir. 2014).

Generally, a petitioner's lack of legal expertise is not cause to excuse procedural default.  See, e.g., Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 908 (9th Cir. 1986). To establish prejudice, the petitioner must show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting his criminal proceedings with constitutional violations.  See Vickers, 144 F.3d at 617; Correll, 137 F.3d at 1415–16. Establishing prejudice requires a petitioner to prove that, "but for" the alleged constitutional violations, there is a reasonable probability he would not have been convicted of the same crimes. See Manning v. Foster, 224 F.3d 1129, 1135–36 (9th Cir. 2000); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999). Although both cause and prejudice must be shown to excuse a procedural default, the Court need not examine the existence of prejudice if the petitioner fails to establish cause.  See Engle v. Isaac, 456 U.S. 107, 134 n.43, 102 S. Ct. 1558, 1575 n.43 (1982); Thomas, 945 F.2d at 1123 n.10.

A state criminal defendant does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings.  See, e.g., Pennsylvania v. Finley, 481 U.S. 551, 555,  107 S. Ct. 1990, 1993  (1987); Graves v. McEwen, 731 F.3d 876, 878 (9th Cir. 2013).  Accordingly, the general rule is that errors

of counsel during a state post-conviction action cannot constitute "cause" to excuse the procedural default of a federal habeas claim.  See, e.g., Coleman, 501 U.S. at 752, 111 S. Ct. at 2565; Clabourne, 745 F.3d at 374.   However, the Supreme Court's opinion in Martinez v. Ryan, 132 S. Ct. 1309 (2012), established a limited exception to this general rule, which exception applies only to Sixth Amendment ineffective assistance of trial counsel claims.  Martinez held that inadequate assistance of post conviction counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 1315.  In Nguyen v. Curry, 736 F.3d 1287, 1293 (9th Cir. 2013), the Ninth Circuit expanded Martinez, holding that this doctrine can also apply to excuse the procedural default of claims asserting ineffective assistance of direct appeal counsel.

In Trevino v. Thaler, the Supreme Court delineated the Martinez analysis as consisting of four prongs:

> We consequently read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

133 S. Ct. 1911, 1918 (2013), citing Martinez, 132 S. Ct. at 1318–19, 1320–21 (alterations in original).

The first prong of this test requires a petitioner seeking to rely on Martinez to bring forward facts demonstrating that his underlying ineffective assistance of trial or appellate counsel claim is substantial. The Supreme Court has defined "substantial" as a claim that "has some merit." Martinez, 132 S. Ct. at 1318.  Stated inversely, a claim is "insubstantial" if "it does not have any merit or ... is wholly without factual support." Id. at 1319. Determining whether an ineffective assistance of counsel claim is substantial requires the Court to examine the claim under the standard stated in Strickland v.

Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). A petitioner asserting ineffective assistance of counsel must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." Id., 466 U.S. at 687, 104 S. Ct. at 2064.  Additionally, not just any error or omission of counsel will be deemed "deficient performance" that will satisfy Martinez; if post-conviction counsel "in the initial-review collateral proceeding did not perform below constitutional standards," that attorney's performance does not constitute "cause." 132 S. Ct. at 1319.  Most notably, counsel "is not necessarily ineffective for failing to raise even a non-frivolous claim," much less a frivolous claim.  Sexton v. Cozner, 679 F.3d 1150, 1157 (9th Cir. 2012) (emphasis added).  See also Woods, 764 F.3d at 1143-44.

### C. Fundamental miscarriage of justice

Review of the merits of a procedurally defaulted habeas claim is required if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental miscarriage of justice.  See Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); Schlup v. Delo, 513 U.S. 298, 316, 115 S. Ct. 851, 861 (1995); Murray v. Carrier, 477 U.S. 478, 485–86, 106 S. Ct. 2639, 2649 (1986).  A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is factually innocent. See Murray, 477 U.S. at 485–86, 106 S. Ct. at 2649; Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental miscarriage of justice" standard, a petitioner must establish by clear and convincing evidence that no reasonable fact-finder could have found him guilty of the offenses charged.  See Dretke, 541 U.S. at 393, 124 S. Ct. at 1852; Wildman v. Johnson, 261 F.3d 832, 842–43 (9th Cir. 2001).

Petitioner has not offered cause nor prejudice in reply to Respondents' assertion that Petitioner did not properly exhaust his claims in the state courts.

**D. Standard of review of exhausted claims**

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law or the state court decision was an unreasonable application of clearly established federal law.  See 28 U.S.C. § 2254(d); Carey v. Musladin, 549 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); Musladin v. Lamarque, 555 F.3d 834, 838 (9th Cir. 2009).  "Under AEDPA, a federal court may not grant a petition for a writ of habeas corpus unless the state court's adjudication on the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  Lafler v. Cooper, 132 S. Ct. 1376, 1390 (2012), quoting 28 U.S.C. § 2254(d)(1).

> A state court applies a clearly established standard unreasonably only if no "reasonable interpretation of the controlling [Supreme Court] standard" can "support [the state court's] legal ruling." Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, [] (2007). So, when evaluating the reasonableness of a state court's application of a general standard, we must defer to any "principled reason for the state court to distinguish between the case before it and Supreme Court precedent." Murdoch v. Castro, 609 F.3d 983, 992 (9th Cir. 2010) (en banc). Moreover, § 2254(d)(1), the Supreme Court recently explained,
>
>> does not require state courts to extend [a Supreme Court] precedent or license federal courts to treat the failure to do so as error. Thus, "if a habeas court must extend a rationale before it can apply to the facts at hand," then by definition the rationale was not "clearly established at the time of the state-court decision." AEDPA's carefully constructed framework "would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law."
>
> White, 134 S.Ct. at 1706 (internal citations omitted) (quoting Yarborough, 541 U.S. at 666, 124 S.Ct. 2140).

Arrendondo, 763 F.3d at 1133-34.

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error ... beyond any possibility for fairminded disagreement." Harrington v. Richter, [] 131 S.Ct. 770, 786–787, [] (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." [] 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. [], 131 S.Ct., at 786 (internal quotation marks omitted).

Burt v. Titlow, 134 S.Ct. 10, 15-16 (2013).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law as stated in *United States Supreme Court opinions*, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. See, e.g., Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); Yarborough v. Alvarado, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004); Soto v. Ryan, 760 F.3d 947, 957 (9th Cir. 2014); Runningeagle v. Ryan, 686 F.3d 758, 785 (9th Cir. 2012), cert. denied, 133 S. Ct. 2766 (2013).

The "only definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision." Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, [] (2003). If Supreme Court "cases give no clear answer to the question presented, ... it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126, 128 S.Ct. 743, [] (2008) (internal quotation marks omitted). In other words, "'[i]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court].'" Richter, 131 S.Ct. at 786 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S.Ct. 1411, [] (2009)).

McKinney v. Ryan, 730 F.3d 903, 909 (9th Cir. 2013).

To satisfy the "unreasonable application" portion of the first prong, the petitioner must demonstrate that the state court's application of Supreme Court precedent to the facts of his case was not only incorrect but "objectively unreasonable." Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 360 (2002). "While Supreme Court precedent is the only authority that is controlling under AEDPA, we look to Ninth Circuit case law as

1
2
3

'persuasive authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law.'" Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002) (quoting Van Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir. 2000)...[]

4
5

Davis v. Woodford, 384 F.3d 628, 637-38 (9th Cir. 2004).

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. See McNeal v. Adams, 623 F.3d 1283, 1287–88 (9th Cir. 2010). The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." Ramdass v. Angelone, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000). See also Cheney v. Washington, 614 F.3d 987, 994 (9th Cir. 2010). However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. See, e.g., Renico v. Lett, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010); Runningeagle, 686 F.3d at 785. An unreasonable application of law is different from an incorrect one. See Renico, 130 S. Ct. at 1862; Cooks v. Newland, 395 F.3d 1077, 1080 (9th Cir. 2005). "That test is an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case." Adamson v. Cathel, 633 F.3d 248, 255–56 (3d Cir. 2011). See also Howard v. Clark, 608 F.3d 563, 567–68 (9th Cir. 2010).

25
26
27
28

The last reasoned decision of a state court must be identified in order to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1). See, e.g., Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112–13 (9th Cir. 2003). Additionally, section 2254(e)(1) provides that, in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual

issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  See also  Miller–El v. Dretke, 545 U.S. 231, 240–41, 125 S. Ct. 2317, 2325 (2005); Miller–El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003); Runningeagle, 686 F.3d at 763 n.1; Crittenden v. Ayers, 624 F.3d 943, 950 (9th Cir. 2010); Stenson, 504 F.3d at 881; Anderson v. Terhune, 467 F.3d 1208, 1212 (9th Cir. 2006).  A state court decision that was on the merits and was based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings. Miller–El v. Cockrell, 537 U.S. at 340, 123 S.Ct. at 241.  The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304–05 (1982).  Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  See also Murray v. Schriro, 745 F.3d at 998.

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires.  See Lafler, 132 S. Ct. 1389-90; Panetti v. Quarterman, 551 U.S. 930, 953–54, 127 S. Ct. 2842, 2858–59 (2007); Runningeagle, 686 F.3d at 785-86; Greenway v. Schriro, 653 F.3d 790, 805–06 (9th Cir. 2011).

### E. Petitioner's claims for relief

**1. Petitioner asserts he was denied his right to the effective assistance of counsel "due to false indictment".**

Petitioner did not properly exhaust an ineffective assistance of trial counsel or appellate counsel claim in a properly-filed state action for post-conviction relief.

Petitioner has not asserted nor established cause for, nor prejudice arising from the failure to properly exhaust such a claim in the state courts.  Nor has Petitioner established that a fundamental miscarriage of justice will occur absent consideration of the merits of this claim.   Petitioner has not established that the claim has substantial merit pursuant to Martinez.  Accordingly, the Court should not consider the merits of the claim.

**2.   Petitioner contends that there was insufficient evidence to sustain his convictions.**

Petitioner properly exhausted an insufficient evidence claim in the state courts. Petitioner raised this issue in his direct appeal to the Arizona Court of Appeals, which denied relief on the merits of the claim.  The Court of Appeals stated:

> Defendant contends that the trial court erred when it denied his Rule 20 motion for directed verdict. He argues that the State "did not present testimony from the true owner of the Explorer regarding whether or not [Defendant] had permission to drive the vehicle." Furthermore, he claims that the jury could not rely on Kevin's testimony as substantial evidence because Kevin had two prior felony convictions. We disagree.
> We review the denial of a Rule 20 motion de novo and examine the evidence in the light most favorable to sustaining the verdict. Because Defendant testified at trial, we review the entire record and not just the State's case-in-chief.
> Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction. We make no distinction between the probative value of direct and circumstantial evidence. We will not set aside a jury verdict for insufficient evidence unless it clearly appears that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury. Furthermore, if conflicts appear in the evidence, we will resolve them in favor of sustaining the verdict.
> Moreover, the credibility of witnesses is an issue to be resolved by the jury, and, as long as there is substantial evidence, we will not disturb its determination. Evidence is no less substantial simply because the testimony is conflicting or reasonable persons may draw different conclusions therefrom. If reasonable minds could differ as to whether the properly admitted evidence, and the inferences therefrom, prove all elements of the offense, a motion for acquittal should not be granted.
> Defendant argues that the jury did not hear from the owner of the SUV that he did not have permission to use the vehicle, and, as a result, the evidence was insufficient to convict him. The plain language of the statute, however,

does not require testimony from the true owner of a vehicle. The statute simply requires proof that, "without lawful authority, [Defendant] knowingly...[controlled] another person's means of transportation knowing or having reason to know that the property [wa]s stolen." A.R.S. § 13-1814(A)(5). The strength or weakness of testimony is not measured by the number of witnesses; one witness, if relevant and credible, is sufficient to support a conviction.

The jury heard from Kevin, who testified extensively. Kevin testified that his brother owned the SUV and that he never knew David to have loaned the SUV to anyone; that he paid the SUV's insurance so that David could use it for work; that David had given him the SUV's keys and registration while he was in the hospital; and that he did not know Defendant and had never given him permission to drive the SUV. Defendant also testified that he did not know either David or Kevin, and implied that he did not have either brother's permission to drive the SUV. Although David could not testify, the jury had to determine whether to believe Kevin, and we will not interfere with its assessment of a witness's credibility on appeal. We conclude there was sufficient evidence from which the jury could determine that Defendant did not have permission to use the SUV.

Answer, Exh. I at 5-8.   The Court of Appeals further concluded:

There was also sufficient evidence from which the jury could find that Defendant knew he possessed a stolen vehicle. Despite Defendant's experience as "an auto salesman" who knew the proper way to buy a vehicle, he conceded that a torn out ignition would "probably" be an indicator to a layperson that a car might be stolen. He also testified that he knew he should not have been driving the SUV without a proper title, but maintained that he "had to move it" before he received the title from the seller or it would have been towed. Defendant also admitted that he did not know the seller, whether he owned the SUV, or whether the seller had any right to sell it. The testimony and evidence of the cracked column, screwdriver for a key, and fictitious license plate constitute substantial evidence to sustain the verdict.

Defendant also claims that Kevin's testimony could not provide substantial evidence for the jury's consideration because of his two prior felony convictions. The issue of any witness's credibility, however, is strictly for the jury to resolve. No rule is better established than that the credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the jury. The record demonstrates that the jury was made aware of Kevin's felony convictions for possession of a forgery device, and the jury was free to consider this information to determine whether Kevin was credible.

1    Id., Exh I at 5-9 (internal quotations and citations omitted).

2          The state court's decision was not clearly contrary to nor an unreasonable

3    application of federal law because the Arizona Court of Appeal's decision was not

4    contrary to nor an unreasonable application of the United States Supreme Court's

5    decision in Jackson v. Virginia, 443 U.S. 307, 319 (1979), which governs the analysis of

6    constitutional sufficiency claims,  Jackson requires an inquiry as to whether any rational

7    trier of fact could have found the petitioner guilty beyond a reasonable doubt after

8    looking at the evidence in the light most favorable to the state court judgment and after

9    considering all reasonable inferences in support of that judgment. See Parker v.

10   Matthews, 132 S. Ct. 2148, 2152 (2012);  McDaniel v. Brown, 558 U.S. 120, 121 (2010).

11
             We have made clear that Jackson claims face a high bar in federal habeas
12           proceedings because they are subject to two layers of judicial deference.
             First, on direct appeal, "it is the responsibility of the jury—not the court—
13           to decide what conclusions should be drawn from evidence admitted at
             trial. A reviewing court may set aside the jury's verdict on the ground of
14           insufficient evidence only if no rational trier of fact could have agreed with
             the jury." Cavazos v. Smith, 565 U.S. 1, ——, 132 S.Ct. 2, 4, []. And
15           second, on habeas review, "a federal court may not overturn a state court
             decision rejecting a sufficiency of the evidence challenge simply because
16           the federal court disagrees with the state court. The federal court instead
             may do so only if the state court decision was 'objectively unreasonable.'"
17           Ibid. (quoting Renico v. Lett, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862,
             176 L.Ed.2d 678 (2010)).
18

19

20   Coleman v. Johnson, 132 S.Ct. 2060, 2062 (2012).

21         The state court of appeals reiterated, as did the United States Supreme Court in

22   Cavazos, that it is the jury's responsibility to determine what conclusions are to be drawn

23   from the evidence and that the reviewing court may intervene only if no rational trier of

24   fact could have agreed with the jury. See 132 S. Ct. at 3.  Accordingly, Petitioner is not

25   entitled to federal habeas relief on this claim for relief.

26

27

28

**3. Petitioner argues that the trial court erroneously denied Petitioner's motion to treat "K.G." as a witness, rather than a victim, for purposes of the state rule excluding witnesses from being present at trial.**

Petitioner presented this claim to the Arizona Court of Appeals as a claim that the state constitution and the state laws of criminal procedure were violated because "KG" (Kevin), the SUV owner's brother, testified as a witness and was also initially listed as a victim.  Petitioner did not exhaust the claim in the state courts as one stating a violation of his federal constitutional rights.

> In denying this claim in the direct appeal, the Arizona appellate court found: Kevin was listed as the victim, in addition to David. Just before trial, the rule of exclusion of witnesses was invoked and Defendant unsuccessfully sought to exclude Kevin from the courtroom. Defendant did not request a hearing, and had not challenged the indictment. He only argued that the State had not produced any information to demonstrate that Kevin either had lawful authority over the SUV or was his brother's legal representative. Subsequently, after the State's case-in-chief and the Rule 20 motion, the court amended the indictment sua sponte by removing Kevin as a victim.¶ 19 Defendant now argues that the court erred by denying his motion to exclude Kevin. He also claims that the error was prejudicial because he was not permitted to interview Kevin prior to trial because he was listed as a victim, which affected his entire trial preparation and defense strategy.

Answer at 15-16.

In denying this claim, the appellate court discussed the relevant state statutes.  The court concluded that: "Although Kevin was listed as a victim in the indictment, the court eventually determined that he was not a crime victim. We therefore assume, without deciding, that the court erred by denying Defendant's motion to exclude Kevin." Answer, Exh. I at 10.

The appellate court then applied harmless error analysis to the error:

> We find that the denial of the motion to exclude Kevin was harmless error. After the motion to exclude was denied, Kevin was the first witness after opening statements. Defendant then took full advantage of the opportunity to cross-examine Kevin. Moreover, Kevin left the courtroom after giving his testimony, as the court subsequently indicated.
>  Our supreme court has noted that the rule of exclusion is intended "to

encourage the discovery of truth, and detection and exposure of falsehood." State v. Stolze, 112 Ariz. 124, 126, 539 P.2d 881, 883 (1975) (citation omitted). The fact that Kevin was the first witness and left the courtroom immediately after his testimony demonstrates that any prejudice that might have been caused by the denial of the motion is non-existent. He did not hear other testimony and there is no suggestion that he tried to tailor his testimony to any other information. Consequently, any error was harmless.

Id., Exh. I at 11-12.

As noted by Respondents, this claim involves the application of a state rule of criminal procedure and the definition of a victim pursuant to the Arizona law.  A violation of state law does not constitute a cognizable basis for granting federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991); Engle v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567 (1982) ("A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts."); Poland v. Stewart, 169 F.3d 573, 584 (9th Cir. 1999) ("Federal habeas courts lack jurisdiction . . . to review state court applications of state procedural rules.").

Additionally, Petitioner did not present this claim in the state courts as a claim that his federal right to due process of law had been violated  See Answer, Exh. L at 17-19; Exh. N at 10-11.   And, as the state appellate court correctly determined, any error was harmless because Kevin was the first witness and left the courtroom immediately after his testimony and, accordingly, "prejudice that might have been caused by the denial of the motion is non-existent. He did not hear other testimony and there is no suggestion that he tried to tailor his testimony to any other information." Id.,  Exh. L at 12.

### III Conclusion

Petitioner did not properly exhaust an ineffective assistance of counsel claim in the state courts and Petitioner has not shown cause for nor prejudice arising from his procedural default of this claim nor has Petitioner established the claim was substantial pursuant to Martinez.  The Arizona Court of Appeals' decision with regard to Petitioner's insufficiency of the evidence claim was not clearly contrary to nor an unreasonable

1    application of federal law.  Petitioner's claim regarding the exclusion of witnesses was

2    not fairly presented to the Arizona Court of Appeals as a claim that his federal

3    constitutional rights were violated and Petitioner has not shown cause for nor prejudice

4    arising from the procedural default of this claim.  Additionally, the Arizona Court of

5    Appeals' was not incorrect in concluding that any error with regard to the denial of the

6    motion regarding exclusion was harmless error.

7
8        **IT IS THEREFORE RECOMMENDED that** Mr. Benedetto's motion for relief

9    from his conviction and sentence pursuant to section 2254 be denied and dismissed with

10   prejudice.

11
12       This recommendation is not an order that is immediately appealable to the Ninth

13   Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules

14   of Appellate Procedure, should not be filed until entry of the district court's judgment.

15       Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have

16   fourteen (14) days from the date of service of a copy of this recommendation within

17   which to file specific written objections with the Court.  Thereafter, the parties have

18   fourteen (14) days within which to file a response to the objections.

19       Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District

20   Court for the District of Arizona, objections to the Report and Recommendation may not

21   exceed seventeen (17) pages in length. Failure to timely file objections to any factual or

22   legal determinations of the Magistrate Judge will be considered a waiver of a party's right

23   to de novo appellate consideration of the issues.  See United States v. Reyna-Tapia, 328

24   F.3d 1114, 1121 (9th Cir. 2003) (en banc).  Failure to timely file objections to any factual

25   or legal determinations of the Magistrate Judge will constitute a waiver of a party's right

26   to appellate review of the findings of fact and conclusions of law in an order or judgment

27   entered pursuant to the recommendation of the Magistrate Judge.

28       Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a
     certificate of appealability when it enters a final order adverse to the applicant."  The

1  undersigned recommends that, should the Report and Recommendation be adopted and,

2  should Petitioner seek a certificate of appealability, a certificate of appealability should

3  be denied because Petitioner has not made a substantial showing of the denial of a

4  constitutional right.

5  /

6  /

7  /

8     Dated this 30th day of October, 2014.

9

10

11  _____

        Mark E. Aspey

12      United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28